JOHN C. CAMERON ET AL. v. THE MERCHANTS' AND MAN-
UFACTURERS' BANK OF DETROIT.

*Interest—General Banking Law—Comp. L., § 2185.*

Ten per cent. interest for discounts on loans can be taken under the general banking law of Michigan (Comp. L., § 2185).

Where ten per cent. interest is exacted, the rate need not be expressly stated in writing; it is enough if the contract clearly expresses the sum to be paid.

The statutory requirement that stipulations for ten per cent. interest shall be in writing was meant to prevent ambiguity as to what interest was to be paid, and to conform to the rule rejecting parol explanations of writings.

The practical interpretation of a law by long, notorious and unquestioned usage will be regarded in construing it.

Error to Superior Court of Detroit. Submitted June 20. Decided October 2.

ASSUMPSIT by the bank against plaintiffs in error as owners and endorsers of two notes pledged without their knowledge by the holder as collateral security for the pay-

ment of another note which the bank had discounted for him at the rate of ten per cent. and to which plaintiffs in error were not parties. It was admitted that the bank was a corporation organized under the general banking laws of Michigan, and that it was entitled to recover unless barred by Comp. L., § 2185, which makes it unlawful to take or receive more than the legal rate of interest in advance on its loans and discounts. The court below directed a verdict for the bank.

*Maynard & Swan* for plaintiffs in error. The legal rate of interest is that prescribed by law in cases where the parties have not stipulated in writing for a higher rate (*Beals v. Amador County*, 35 Cal., 633; *Mason v. Callender*, 2 Minn., 376; *Talcott v. Marston*, 3 Minn., 346; *Kent v. Bown*, 3 Minn., 347) and the stipulation must be for its payment specifically as interest. *Rosenbluth v. Dunn*, 41 Conn., 619. For legislative construction see Comp. L., § 6546, and for indications of the State policy see Charter Laws 1849, pp. 125, 140, 151, 253–4. The agreement being unlawful by the statute cannot be the basis of a recovery. *Orr v. Lacey*, 2 Doug. (Mich.), 254; *Snyder v. Willey*, 33 Mich., 495; *Bissell v. Michigan, etc., R. R. Co.*, 22 N. Y., 304, 305; *Gaither v. The Farmers, etc. Bank*, 1 Peters, 37; *Hunt v. Knickerbacker*, 5 Johnson, 327; *Thalimer v. Brinkerhoff*, 20 Johnson, 396; *Bank of U. S. v. Owens*, 2 Peters, 527; *State Bank v. Coquillard*, 6 Ind., 235–6–7; *Life & Fire Ins. Co. v. Mechanic Fire Ins. Co.*, 7 Wend., 31; *Seneca County Bank v. Lamb*, 26 Barbour, 595; *Albert v. Savings Bank*, 2 Maryland, 159; *Bank of Michigan v. Niles*, 1 Doug. (Mich.), 412; *Caswell v. Central, etc., Co.*, 50 Georgia, 70; *Leavitt v. Palmer*, 3 Comstock, 19; *Talmage v. Pell*, 3 Selden, 346; *Braynard v. Hoppock*, 7 Bosworth, 157; *Schroeppel v. Corning*, 5 Denio, 236. Corporations can make no contracts that do not come directly or incidentally within the specific purpose for which they were established. Angell & Ames on Corporations, § 256; *Chillicothe Bank v. Swayne*, 8 Ohio, 257; *Creed v. Commercial Bank*, 11 Ohio, 489; *Spalding v. Bank of Muskingum*, 12 Ohio, 544; *Bank of Salina v. Al-*

*vord*, 31 N. Y., 473, 477, 478; *Bissell v. Michigan Southern Railroad Co.*, 22 N. Y., 304, 305.

*Baker & Campau* for defendants in error. The phrase "legal interest only" as used in the usury law (Comp. L., § 1633) means the highest legal rate not prohibited by statute. *Smith v. Stoddard*, 10 Mich., 150. Even if it is held that banks can take only seven per cent., their contract for a higher rate would be good as to all but what the usury law prohibits or declares forfeited. *Rock River Bank v. Sherwood*, 10 Wis., 230; *Com. Bank v. Nolan* 7 How (Miss.), 508; *McLean v. Lafayette Bank*, 3 McLean, 587; *Quinsigamond Bank v. Hobbs*, 11 Gray, 250; *Farmers' Bank v. Burchard*, 33 Vt., 346; *Bank of Middlebury v. Bingham*, Id., 621; *Fleckner v. U. S. Bank*, 8 Wheat., 355; *Philadelphia Loan Co. v. Towner*, 13 Conn., 257; *Bandel v. Isaac*, 13 Md., 202. The contract of a corporation is not of necessity illegal and wholly void for exceeding in some respects its corporate powers. *DeGroff v. Am. Lin. Th. Co.*, 21 N. Y., 127, 128; *Parish v. Wheeler*, 22 N. Y., 503; *Bissell v. Mich. S. & N. I. R. R. Co.*, 22 N. Y., 258; *Hazlehurst v. Savannah, etc., R. R. Co.*, 43 Ga., 54; *Bradley v. Ballard*, 55 Ill., 413; *Underwood v. Newport Lyceum*, 5 B. Mon., 129; *Monument National Bank v. Globe Works*, 101 Mass., 57; *Swartwout v. R. R. Co.*, 24 Mich., 396. Plaintiffs in error, not being parties to the discounted note, could not set up its illegality as a defense. Only a party to a usurious contract can set up usury against it. *Craig v. Butler*, 9 Mich., 21; *Farmers' etc., Bank v. Kimmel*, 1 Mich., 84; *Higginson v. Gray*, 6 Metc., 220.

CAMPBELL, J. The only question in this case is, whether under the general banking law, a bank may take ten per cent., instead of seven, for discounts on loans. The statute, in giving discounting and other banking powers, contains a proviso "that it shall not be lawful for any such association to take or receive more than the legal rate of interest in advance on its loans and discounts." 1 Comp. L., § 2185. It is claimed by plaintiff in error that the phrase "legal

rate of interest" means seven per cent., which is the rate
fixed where the contract is silent on the rate, and that it
cannot authorize the taking of ten per cent., although that
amount may be agreed upon by all persons except banks.

It seems to be assumed that although ten per cent. may
be taken by those who stipulate for it in writing, yet this
rate is in some way to be regarded as not favored in law,
and as allowed under such restrictions as indicate that it is
to be deemed a hard exaction. And attention is also called
to the fact that the old bank charters only allowed seven
per cent. to be taken.

So far as these old charters are concerned, it will be
found that of the banks chartered before the Revised Stat-
utes of 1838, all were allowed to take the highest legal inter-
est permitted by the general laws existing at their chartered
date, the earliest being confined to six per cent., and the
subsequent charters allowing seven. Private contracts at
the same period involved forfeitures for any excess beyond
the legal rates. The statutes rescinding these forfeitures
and simply making the contract invalid to the extent of the
excess of interest, are comparatively recent. We find no
trace in our early legislation of any disposition to put banks
on any worse footing than individuals, as lenders on inter-
est. After the rate of interest had been so fixed as to
allow contracts for ten per cent., the charters were, it is
true, granted in such terms as to put the new corporations
on the same footing as the old, and confine them to seven
per cent. But it is evident this was only done to prevent
inequality. The early State Legislatures never tampered
with the older charters, and left the six per cent. restriction
in force, where existing, just as they did the seven per cent.
clause. Most of the banks were organized before ten per
cent. could be taken by any person. And it is worthy of
remark that no bank charter is to be found which does not
fix the percentage to be allowed expressly. The term "legal
rate of interest" is never used in those instruments.

The general banking law of 1857 was passed at a time
when it was desired to bring capital into the State, and
relieve our citizens from depending on foreign banks and

currency. This law imposed some restrictions intended to secure bill-holders and prevent frauds. But, contrary to the policy of the earlier legislation, it permitted no favoritism and created no monopolies. There was no reason, therefore, for exacting from banks any unusual conditions of business. The rejection of any fixed percentage, and the permission to discount at the legal rate of interest show, as we think, an intention to place bank loans on the same footing, as to rates, with private loans. This is the natural inference from the language, and this has been the general understanding and usage, continued without question from any source, and open and notorious. This practical interpretation by the people and the authorities, would deserve consideration if the language had been ambiguous. We do not think it is ambiguous, and the narrow meaning is unnatural, and at variance with the policy which has for forty years tended towards the removal and not the creation of usury penalties. If either seven or ten per cent. had been mentioned in terms, it might happen, as it did in 1833, that bank rates would differ from others; whereas by leaving contracts subject to legal rates, changes in the law would operate on banks as on all others, whether enlarging or restricting commercial freedom.

The suggestion that the statute requires stipulations for ten per cent. to be in writing, and that unless that rate is expressly mentioned the paper is illegal, is not well founded. The object of the statute was evidently to require the writing to remove the ambiguity that would otherwise exist on the face of an instrument calling for interest, and mentioning no rate. It was to conform to the rule rejecting parol explanations of writings. But where the sum of money to be paid is expressed, there is no ambiguity, and if it included no more than ten per cent. interest it is valid. *Smith v. Stoddard*, 10 Mich., 148.

There is no error in the record, and the judgment must be affirmed with costs.

The other Justices concurred.